[No. C054129. Third Dist. June 26, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT DAVIS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

**COUNSEL**

George O. Benton, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NICHOLSON, J.**—Convicted by jury of first degree murder with use of a firearm and sentenced to 50 years to life in state prison, defendant appeals. He contends that (1) the prosecutor improperly used peremptory challenges to excuse prospective jurors based on race and (2) the trial court abused its discretion in excluding evidence of a handgun owned by the victim. We affirm.

## FACTS

In late 2001, defendant and his wife, Dolores Sanders, separated, after being together 15 years and married six. Sanders moved in with her daughter and son-in-law, Connie and Jerry Johnson, while defendant moved to New Orleans. Several months later, defendant returned from New Orleans and tried to convince Dolores to resume their relationship. She refused.

Defendant continued in his efforts to resume his relationship with Dolores, calling frequently and going to her home unannounced, all to no effect. In late 2004, defendant's communications to Dolores became more threatening and irrational. He said he was going to kill himself. Defendant claimed that Jerry was controlling Dolores.

In early 2005, Dolores obtained a restraining order, prohibiting defendant from having contact with her or the others in her household. Nonetheless, defendant continued in his efforts to contact Dolores. Defendant left a voice mail message for Dolores telling her that he loved her and would not hurt her, but that she would "feel the [e]ffects."

Jerry normally left for work between 3:30 and 3:45 in the morning. Defendant knew about Jerry's work schedule. On May 9, 2005, defendant confronted Jerry as Jerry left for work in the early morning and, using a rifle, shot him in the abdomen.

Dolores was awakened by the gunshot. She went to the front of the house and found Jerry on the lawn, calling for help. She went outside and Jerry said, referring to defendant who was no longer there, "Al shot me."

Connie, who was sleeping in her room upstairs, was also awakened by a loud boom. She followed Dolores out of the house to where Jerry was lying. When an ambulance arrived, she ran upstairs, changed her clothes, and returned downstairs to accompany Jerry to the hospital.

A neighbor, William Pahia, was awakened by yelling on the morning of the shooting. He heard two voices, and one of the voices said, "No, not that." He heard a loud gunshot, and then a quieter one that may have been an echo.

Jerry died about two hours after he was shot.

Defendant was pulled over in his car about 4:00 a.m., within minutes after the shooting. He had a rifle in the trunk of his car. Testing revealed that the bullet recovered from Jerry was fired from the rifle possessed by defendant. A test for gunshot residue revealed one particle of residue on the back of defendant's right hand.

## DISCUSSION

## I

### *Peremptory Challenges*

The prosecutor used two of her peremptory challenges to excuse African-American women from the jury venire. The trial court found that the prosecutor did not use the peremptory challenges for an improper purpose. (See *Batson v. Kentucky* (1986) 476 U.S. 79, 84–89 [90 L.Ed.2d 69, 79–83, 106 S.Ct. 1712] (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258, 276–277 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*).) On appeal, defendant contends that the judgment must be reversed because (1) the trial court did not make a "sincere and reasoned effort" to evaluate the prosecutor's stated reasons for challenging the two prospective jurors and (2) the prosecutor's stated reasons were unconvincing. We conclude that the trial court properly evaluated the prosecutor's stated reasons and did not err in concluding that the prosecutor's reasons were proper.

### A. *Legal Background*

The California Supreme Court summarized the law regarding discriminatory peremptory challenges:

█ "Both the state and federal Constitutions prohibit the use of peremptory challenges to remove prospective jurors based solely on group bias. (*Batson, supra,* 476 U.S. at p. 89; *Wheeler, supra,* 22 Cal.3d at pp. 276–277.) Recently, 'the United States Supreme Court reaffirmed that *Batson* states the procedure and standard to be employed by trial courts when challenges such as defendant's are made. █ "First, the defendant must make out a prima facie case by 'showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citations.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the

strike has proved purposeful racial discrimination.' [Citation.]" ' (*People v. Cornwell* (2005) 37 Cal.4th 50, 66–67 [33 Cal.Rptr.3d 1, 117 P.3d 622], quoting *Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129, 125 S.Ct. 2410], fn. omitted (*Johnson*).) The high court clarified that 'a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.' (*Johnson, supra*, at p. 170 . . . , reversing in part *People v. Johnson* (2003) 30 Cal.4th 1302, 1318 [1 Cal.Rptr.3d 1, 71 P.3d 270] [requiring the defendant to 'show that it is more likely than not the other party's peremptory challenges, if unexplained, were based on impermissible group bias'].)

"In determining whether the defendant ultimately has carried his burden of proving purposeful racial discrimination, 'the trial court "must make 'a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily . . . .' [Citation.]" ' (*People v. Reynoso* (2003) 31 Cal.4th 903, 919 [3 Cal.Rptr.3d 769, 74 P.3d 852].) '[T]he trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine.' (*Ibid.*) Inquiry by the trial court is not even required. (*Id.* at p. 920.) 'All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory.' (*Id.* at p. 924.) A reason that makes no sense is nonetheless 'sincere and legitimate' as long as it does not deny equal protection. (*Ibid.*)" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1100–1101 [40 Cal.Rptr.3d 118, 129 P.3d 321]; see also *People v. Stanley* (2006) 39 Cal.4th 913, 936 [47 Cal.Rptr.3d 420, 140 P.3d 736].)

The trial court's ruling on the issue of purposeful racial discrimination is reviewed for substantial evidence. (*People v. Avila* (2006) 38 Cal.4th 491, 541 [43 Cal.Rptr.3d 1, 133 P.3d 1076].) Because the trial court is in the best position to observe the demeanor of a prospective juror, we accord that court's findings, express and implied, great deference. (*People v. Reynoso, supra*, 31 Cal.4th at p. 926; see also *People v. Stanley, supra*, 39 Cal.4th at p. 939.)

### B. *Procedure*

Before defendant's *Wheeler* motion, the prosecution used peremptory challenges to excuse nine jurors, two of whom were African-American

women: first K.H., and then H.B. After the prosecutor used a peremptory challenge to excuse Prospective Juror H.B., the defense made its *Wheeler* motion. We therefore summarize the voir dire proceedings with respect to those two jurors.

On the first day of jury voir dire, K.H. arrived in the courtroom late, after the other prospective jurors had been sworn in. She asked the court to excuse her on a hardship because of a potential calendaring conflict and because she was looking for work, but the court determined there would be no conflict and therefore denied her request. During questioning of the prospective jurors, K.H. stated that her son had been the victim of a "DUI driver." Upon further questioning, however, it was determined that her son was arrested for driving under the influence and was not the victim. K.H.'s grandfather and her "boyfriends" owned firearms. Defense counsel asked the prospective jurors whether "any time anybody is shot with a firearm that it's necessarily murder." K.H. said she did not understand and asked, "If anybody is shot with a firearm, would it be murder or would it be like attempted murder?" Defense counsel clarified that the hypothetical person dies. Defense counsel could not read what K.H. wrote concerning the occupations of her children, so K.H. told him that one works at a pharmacy and the other delivers documents.

In response to questioning from the court and counsel, H.B. stated that she had worked as a certified nursing assistant for about 20 years but was then working for a paratransit service. She believed she would be open to persuasion, even after asserting an opinion. She felt she could be fair and impartial.

Defense counsel asserted that there was no rational basis for using a peremptory challenge on either of the two prospective jurors. Although K.H.'s son had a conviction for driving under the influence, other jurors had similar experiences. The court noted that two African-American women remained unexcused in the jury box and other African-Americans were in the jury venire. Nonetheless, the trial court determined that defense counsel had established a prima facie case because there was a possible inference of discriminatory purpose. The court noted that the burden therefore shifted to the prosecutor to justify the peremptory challenges.

As to K.H., the prosecutor stated that she had been late and seemed very confused. She sat in the wrong chair and did not seem to be able to follow the court's instructions. She was dazed and somewhat unresponsive, and her son had a conviction for driving under the influence. She had also asked to be excused on a hardship.

As to H.B., the prosecutor noted that she was a bus driver and had worked in that capacity less than two years. Concerning H.B.'s prior experience as a certified nursing assistant, the prosecutor said: "I guess I have a little bias against CNA's based on my own experience involving my father within the last year. He was in a nursing home, and we did not have a very good experience with CNA's, and ended up moving him out. [¶] That's, that was one of the reasons, but it was one of those reasons sort of like the juror before, I wasn't sure whether I should kick her off. I was on the fence about [H.B.] but decided to go with my gut instinct on that."

After allowing defense counsel to respond, the trial court denied the *Wheeler* motion. It found that the prosecutor did not act with a discriminatory purpose in using peremptory challenges to excuse the two African-American women from the pool of prospective jurors.

## C.  *Contentions*

### 1.  *Court's Sincere and Reasoned Effort*

Defendant contends that the record does not reflect a sincere and reasoned effort on the part of the trial court to evaluate the prosecutor's stated reasons for using peremptory challenges on two African-American women. He claims the court should have scrutinized the reasons more carefully, thereby providing a better record for review. Because the trial court did not adequately scrutinize the prosecutor's stated reasons, argues defendant, the court's ruling is not entitled to great deference on appeal. To the contrary, the record establishes that the trial court properly performed its function in responding to defendant's *Wheeler* motion.

As noted above, a trial court is not required to make specific and detailed statements on the record in evaluating a *Wheeler* motion. (*People v. Guerra, supra,* 37 Cal.4th at pp. 1100–1101.) The trial court made the proper inquiry and required the prosecutor to explain her peremptory challenges. The court also allowed defense counsel to respond. Yet defendant asserts that the court should have probed further into the prosecutor's reasons because, in defendant's opinion, the reasons given were not convincing. In the next part, we conclude that the reasons stated were sufficient to sustain the trial court's finding that the peremptory challenges were not used in a discriminatory manner. It suffices here to note that the trial court was required to do no more than it did in considering the *Wheeler* motion.

### 2.  *Sufficiency of Prosecutor's Reasons*

Defendant attacks the reasons the prosecutor gave for her use of peremptory challenges. He claims that, even if the stated reasons were "theoretically 'neutral,' " they were insufficiently convincing. We disagree.

As to Prospective Juror K.H., defendant claims that the prosecutor should have been required to explain why K.H.'s lateness made her less acceptable as a juror. The prosecutor also did not explain how K.H. was dazed or confused or why K.H.'s response to the inquiry about her son's driving under the influence conviction was significant. Defendant concludes: "None of these claimed justifications was reasonable in any way to distinguish [K.H.] from the rest of the jurors; the fair implication was the prosecutor did not like her for a less-innocent reason."

■ This argument is unconvincing. On their face, the prosecutor's reasons were race neutral. Although the question of whether the prosecutor's reasons are rational and reasonable weighs into the trial court's determination of whether to conclude that they are genuine and not a pretext, those reasons need not meet any particular standard of reasonableness. The only relevant consideration for the trial court is whether the reasons were sincere and nondiscriminatory. (*People v. Reynoso, supra,* 31 Cal.4th at p. 924.)

■ Prospective Juror K.H.'s conduct and answers to questioning gave plenty of reasons for an attorney not to want her on the jury. She was not punctual and she did not otherwise do well in following the court's directions. Her son had been involved in criminal activity, for which she characterized him, whether mistakenly or intentionally, as a victim. There was sufficient evidence on this record to support the finding that the prosecutor's use of a peremptory challenge on her was not for discriminatory reasons.

Likewise, the record supports the trial court's finding that the use of a peremptory challenge to excuse Prospective Juror H.B. was not for discriminatory reasons. Excusing her because she was a certified nursing assistant and the prosecutor had bad feelings towards certified nursing assistants because of her experience with her father was a subjective judgment with respect to H.B.'s profession, not her skin color.

But defendant asserts: "This was, beyond doubt, not a neutral explanation related to the particular case being tried, but rather an excuse for the prosecutor's lack of any rational basis for the challenge other than to rid herself of a juror whom she distrusted because of her race." We disagree.

■ Having had a prior bad experience with certified nursing assistants, the prosecutor had a "gut instinct" that she should use a peremptory challenge to excuse H.B. The record does not belie the prosecutor's sincerity in this regard. "A prosecutor may act freely on the basis of 'hunches,' unless and until these acts create a prima facie case of group bias, and even then he may rebut the inference." (*People v. Hall* (1983) 35 Cal.3d 161, 170 [197 Cal.Rptr. 71, 672 P.2d 854].) Further supporting the trial court's determination that this

was not a pretext is that other African-Americans remained in the pool of prospective jurors. (See *People v. Turner* (1986) 42 Cal.3d 711, 719 [230 Cal.Rptr. 656, 726 P.2d 102] [inference of discriminatory purpose when all African-American jurors excused].)

### 3. *Snyder v. Louisiana*

After the briefing in this case was completed, the United States Supreme Court decided *Snyder v. Louisiana* (2008) 552 U.S. ___ [170 L.Ed.2d 175, 128 S.Ct. 1203] (*Snyder*). In *Snyder*, the court reversed a defendant's murder conviction and death sentence because the prosecutor exercised a racially motivated peremptory challenge. We conclude that *Snyder* does not require reversal here.

The jury panel in *Snyder* consisted of 36 prospective jurors, including five African-American prospective jurors, after challenges for cause. The prosecution had 12 peremptory challenges and used five of those to eliminate all of the African-American prospective jurors from the panel. (*Snyder, supra*, 552 U.S. at p. ___ [170 L.Ed.2d at p. 180].) The Supreme Court focused on the prosecutor's reasons for using a peremptory challenge to excuse one particular prospective juror, Jeffrey Brooks, who is African-American. When asked by the trial court for his reasons, the prosecutor stated that he had two: (1) Brooks looked nervous during questioning and (2) he had asked to be dismissed for cause because he was a student-teacher and was missing necessary observation time in the classroom. (*Snyder, supra*, 552 U.S. at pp. ___–___ [170 L.Ed.2d at pp. 181–182].)

Considering the nervousness justification first, the Supreme Court noted that the trial judge did not describe its own observation of Brooks's demeanor and may not have had its own impression concerning whether Brooks seemed nervous. The Supreme Court therefore concluded that it could not presume that the trial court credited the prosecutor's assertion concerning Brooks's nervousness. (*Snyder, supra*, 552 U.S. at p. ___ [170 L.Ed.2d at p. 182].)

The Supreme Court then considered the rationale that, because Brooks was missing student-teaching observation time, he might be too willing to agree quickly to a lesser offense. Based on the facts that (1) the trial court had checked with Brooks's teacher and found that jury service would not present a problem and (2) other prospective jurors had similar concerns about missing work or school, the Supreme Court found the proffered reason suspicious and implausible. (*Snyder, supra*, 552 U.S. at pp. ___–___ [170 L.Ed.2d at pp. 182–186].)

Because the Supreme Court found no support for the trial court's acceptance of the prosecutor's reasons for eliminating Brooks from the jury, it concluded that the prosecutor's proffer was pretextual and that he exercised the challenge with discriminatory intent. It therefore found *Batson* error and reversed.

*Snyder* is distinguishable from this case on the facts. There, the prosecutor used peremptory challenges to excuse all five of the African-American prospective jurors from the panel. Here, the trial court noted that two African-American women remained unexcused in the jury box and other African-Americans were in the jury venire. In *Snyder*, the prosecutor used as a reason the demeanor of the prospective juror, and the trial court made no express finding concerning that prospective juror's demeanor. Here, the prosecutor used an element of demeanor with respect to Prospective Juror K.H., but that demeanor is shown on the record from her lateness and inability to follow the court's instructions. No further finding was needed. In *Snyder*, the Supreme Court found the prosecutor's proffered reason (Brooks's apprehension concerning missing student-teaching time) suspicious and implausible because the prosecutor did not excuse other prospective jurors with similar problems. Here, although Prospective Juror K.H. (1) asked to be excused for cause and (2) had a family member with a drunk driving conviction, and the prosecutor did not excuse others with those circumstances, there were other reasons—inattention and failure to follow instructions—that justified the prosecutor's use of a peremptory challenge based on demeanor. In summary, unlike in *Snyder*, there is in this case no basis to reject the trial court's finding that the prosecutor did not act with discriminatory intent.

There were no *Snyder*-related demeanor issues as to Prospective Juror H.B. Accordingly, we conclude the trial court did not err in denying defendant's *Wheeler* motion.

## II

### *Exclusion of Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 305.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 1, 2008, S165721. Kennard, J., did not participate therein.